**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Natalie Anne Orozco, | No. CV-19-03033-PHX-DMF |
| Plaintiff, | |
| v. | **ORDER** |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Natalie Anne Orozco's Application for a Period of Disability and Disability Insurance Benefits by the Social Security Administration under the Social Security Act (the "Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 18, Pl. Br.), Defendant Social Security Administration Commissioner's Opposition (Doc. 19, Def. Br.), and Plaintiff's Reply (Doc. 20, Reply). The Court has reviewed the Administrative Record (Doc. 17, R.) and now reverses the Administrative Law Judge's ("ALJ") decision, remanding for further proceedings.

**I.     BACKGROUND**

On July 27, 2015, Plaintiff filed a Title II Application for a Period of Disability and Disability Insurance Benefits and a Title XVI Application for Supplemental Security Income, alleging an onset date of October 27, 2013. (R. at 16)  These claims were denied initially and upon reconsideration. (*Id.*)  Plaintiff then appeared and testified at a hearing

before the ALJ.  (R. at 16)  On May 3, 2018, the ALJ denied Plaintiff's claims.  (*Id.*)  This decision became final on March 15, 2019, when the Appeals Council denied Plaintiff's request for review.  (R. at 1-6)  The present appeal followed.

The Court has reviewed the evidence in its entirety and finds it unnecessary to provide a complete summary here.  The pertinent evidence will be discussed in addressing the issues raised by the parties.  In short, upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on a single severe impairment—degenerative disc disease.  (R. at 19)

The ALJ ultimately concluded that Plaintiff is not disabled.  (R. at 13-27)  He found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (R. at 20)  He also found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with some limitations, including:  never climbing ladders, ropes, or scaffolds; occasionally stooping, crawling, and spending time around moving machinery and unprotected heights; and frequently climbing ramps and stairs, balancing, kneeling, and crouching.  (*Id.*)  Based on this finding, the ALJ concluded that Plaintiff can perform her past relevant work as a call center worker and assembly line worker/small products assembler.  (R. at 23)

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole.  *Id.*  To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of

supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step one, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four, where he assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff disputes the ALJ's evaluation of the medical opinion evidence.[1] With regard to Plaintiff's mental impairments, the ALJ gave great weight to the opinion of non-

---

[1] In Plaintiff's Reply, she reframes this as a Step 2 error. (Reply at 2) However, the Court will not consider issues raised for the first time in Plaintiff's Reply. *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

examining state agency physician Andres Kerns. (R. at 19) No treating physician or examining physician opined about Plaintiff's mental impairments. The Court finds that Dr. Kerns's opinion was inconsistent with other evidence of record, and therefore the ALJ's reliance on it in assessing Plaintiff's RFC was reversible error.

In general, the ALJ must consider medical opinion evidence from multiple sources, including treating physicians, examining physicians, and non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A non-examining physician's opinion can serve as substantial evidence to support the ALJ's finding if it is consistent with other evidence of record. *Thomas*, 278 F.3d at 957.

Dr. Kerns opined that Plaintiff has non-severe mental impairments because she did not obtain formal mental health treatment or take her medications regularly. (R. at 19) However, Dr. Kerns's opinion was inconsistent with other evidence of record and accordingly could not serve as substantial evidence. *Thomas*, 278 F.3d at 957. For example, Plaintiff's treatment records reflect that she frequently experienced depression, suicidal ideations, and feelings of hopelessness. (R. at 262, 272, 278, 311, 328, 335, 338, 345, 352) Additionally, although the record reflects that Plaintiff did not receive specialized mental health treatment and did not consistently take her medications as prescribed, she reported that her partner was abusive and interfered with her medical care. (R. at 255, 256, 272, 309, 321, 335, 356) The ALJ failed to consider this conflicting evidence before crediting Dr. Kerns's opinion, which was error. *See* SSR 16-3p (stating that the Social Security Administration will consider possible reasons for a claimant's failure to follow or seek a course of treatment); *Carmickle*, 533 F.3d at 1164 ("The ALJ is responsible for resolving conflicts in the medical record.").

Plaintiff also argues that the ALJ improperly rejected her symptom testimony. (Pl. Br. at 12-20) "Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Lester*, 81 F.3d at 834. Without affirmative evidence showing that the claimant is malingering, the

Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citing *Lester,* 81 F.3d at 834, *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). To assess a claimant's symptom complaints, the ALJ may use "ordinary techniques of credibility evaluation" including inconsistencies between the complaints and the claimant's conduct such as discrepancies related to the alleged symptoms and activities, failure to seek treatment, or failure to follow prescribed treatment. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citations and internal quotation marks omitted).

At Step Two of the sequential analysis, the ALJ concluded that Plaintiff suffered from the severe impairment of degenerative disc disease. (R. at 19) The ALJ found that while this impairment "could reasonably be expected to cause some of the alleged symptoms[,]" Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (R. at 22)

The ALJ relied on evidence that: (1) Plaintiff cared for three young children; (2) Plaintiff testified at the hearing she could lift around 15 to 20 pounds, and a maximum of 25 pounds; (3) medical records between November 2013 and August 2015 indicated that Plaintiff exercised daily; and (4) physical exams performed between November 2013 and August 2015 were "generally unremarkable." (R. at 20-21) The ALJ also observed that "[n]otably, a November 2014 medical report indicates that the claimant has a history of over-taking pain medications and loosing [sic] them.[2] (Exhibit 1F/37) A February 2015 report indicates that the claimant received a two-week supply due to the claimant's frequent over use of medication. (Exhibit 1F/21)." (R. at 22)

The ALJ erred by failing to adequately support these reasons to discount Plaintiff's symptom testimony. The ALJ concluded that Plaintiff's report of having young children requiring her care was an activity that did not support the alleged severity of Plaintiff's

---

[2] Dr. Sheard documented that he would provide Plaintiff pain medications one week at a time. (R. at 280)

- 5 -

pain symptoms. (*Id.*) "[T]o conclude that a claimant's daily activities warrant an adverse credibility determination[,]" "[t]he ALJ must make specific findings relating to [the daily] activities *and* their transferability[.]" *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007) (citation and internal quotation marks omitted) (emphasis added). Because the ALJ neither offered specific findings about Plaintiff's daily child-care activities nor provided any transferability analysis, the bare fact that Plaintiff cares for her children may not serve as sufficient justification for the adverse credibility finding.

The ALJ indicates that Plaintiff's treatment notes from Banner Health consistently indicated that she exercised daily. (R. at 21) This evidence consists of the repeated simple notation "Exercises daily" under the caption "Lifestyle" within the treatment notes' "Social History" section. (R. at 2, 18, 26, 30, 34, 38, 79, 82, 89, 96, 103, 107, 110, 113) There is no description about the duration, intensity, or movement involved with this daily exercise. (*Id.*) The Ninth Circuit has cautioned against ALJs "concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

Additionally, the ALJ's conclusion that Plaintiff's medical treatment records by Dr. Sheard at Banner Health between November 2013 and August 2015 were "generally unremarkable" glosses over evidence that he should have specifically addressed. For example, while the ALJ observes that "[t]he record generally reflects treatment through her primary care physician[,]" Dr. Sheard's treatment notes indicated in June 2014 that after the doctor had referred Plaintiff for a neurosurgery consult, Plaintiff reported she was "unable to go to [a neurosurgeon] due to husband preventing her." (R. at 321) The doctor documented that Plaintiff's partner/husband was abusive. (*See, e.g.,* R. at 287) In February 2015, Dr. Sheard noted that after Plaintiff had undergone a hysterectomy, "[neurosurgery] will consider eval for lumbar surgery." (R. at 264) The ALJ failed to address this evidence. Further, while the ALJ relies on Plaintiff's testimony that she could lift around 15 to 20

pounds, and a maximum of 25 pounds, the ALJ did not discuss any evidence suggesting that Plaintiff would be capable of "frequent lifting or carrying of objects weighing up to 10 pounds[,]" as the RFC the ALJ identified for Plaintiff would require. (R. at 20, 20 C.F.R. § 404.1567(b))

Plaintiff argues the ALJ's analysis fails to support his conclusion "that Plaintiff was drug seeking or that she has mismanaged her medication in such a way as to conclude she must not have a legitimate condition, mental or physical." (Pl. Br. at 15) The Court agrees. Drug-seeking behavior can potentially undermine a claimant's credibility regarding the severity of pain where there is evidence that the claimant has exaggerated complaints of physical pain in order to receive prescription pain medication. *See Edlund v. Massanari*, 253 F.3d 1152, 1157-58 (9th Cir. 2001) (affirming ALJ's rejection of physician's opinion where evidence suggested that claimant was exaggerating complaints of physical pain made to the physician in order to obtain prescription medications). The ALJ's brief mention of Plaintiff's overuse of prescription medications does not allege that Plaintiff exaggerated her pain in order to obtain such medication. Further, the ALJ failed to mention or discuss evidence indicating that on several occasions Plaintiff reported that her husband/partner took her prescriptions from her and disposed of them. (Pl. Br. at 15; R. at 256, 309, 335, 356)

Moreover, the ALJ erred in his assessment of the opinion evidence when he accorded "little weight" to the treating opinion of Plaintiff's general practitioner, Dr. Sheard. The ALJ is required to evaluate every medical opinion he receives. 20 C.F.R. § 404.1527(b). In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(1)-(6) (listing factors to be considered when evaluating opinion evidence,

including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). However, an ALJ "'need not accept the opinion of any physician, including a treating physician, if that opinion is . . . inadequately supported by clinical findings.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31). To meet this requirement, the ALJ must provide "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

The ALJ concluded that Dr. Sheard's December 2015 physical assessment warranted merely little weight, finding the assessment "out of proportion and inconsistent with the evidence of record." (R. at 22) The ALJ again indicated that Dr. Sheard's physical examinations of Plaintiff were "unremarkable," that Plaintiff exercised regularly, and that Plaintiff testified she was able to lift "around 15 to 20 pounds with 25 pounds being her 'max' limit." (*Id.*) The ALJ again cited this same evidence as support for his giving "great weight" to the opinions of the non-examining state agency medical consultants on initial review and on reconsideration. (R. at 22-23) For the reasons discussed above, these grounds are not specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830.

In sum, the ALJ erred in crediting Dr. Kerns's opinion without considering the conflicting evidence of record, in rejecting Plaintiff's symptom testimony, and in rejecting the opinions of Plaintiff's treating provider. These errors warrant reversal and remand for further proceedings.

Finally, Plaintiff summarily requests reassignment to a new ALJ upon remand. (Pl. Br. at 23) On the record before the Court, assignment determination on remand should be made by the Commissioner.

**IT IS THEREFORE ORDERED** reversing the May 3, 2018 decision of the Administrative Law Judge.

**IT IS FURTHER ORDERED** remanding Plaintiff's claim for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this matter.

Dated this 8th day of June, 2020.

_____
Honorable Deborah M. Fine
United States Magistrate Judge